UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TOMEKA RANDOLPH,

       Plaintiff,

vs.

CONGRESS COLLECTION LLC, et al.,

       Defendants.

_____/

Civil Action No.
20-cv-12146

HON. MARK A. GOLDSMITH

**OPINION & ORDER**
**GRANTING DEFENDANT'S SECOND MOTION TO DISMISS (Dkt. 19)**

Plaintiff Tomeka Randolph has filed a putative class action complaint pursuant to the Fair Debt Collection Practices Act (FDCPA). Randolph's claims arise from a debt collection letter sent to her by Defendant Congress Collection, LLC that allegedly contained false, deceptive, and threatening information. Congress Collection moved to dismiss Randolph's claims against it pursuant to Federal Rule of Civil Procedure 12(b)(1), arguing that Randolph lacks standing to bring the instant action (Dkt. 9). The Court provided Randolph an opportunity to amend her complaint in light of Congress Collection's motion (Dkt. 16). After Randolph filed her amended complaint (Dkt. 17), the Court dismissed Congress Collection's motion to dismiss without prejudice (Dkt. 18). Congress Collection has now filed a second Rule 12(b)(1) motion to dismiss (Dkt. 19). For the following reasons, the Court grants Congress Collection's motion.

### I. BACKGROUND

Randolph brings claims for violations of the FDCPA, 15 U.S.C. §§ 1692e and f, resulting from a debt collection letter sent by Congress Collection containing the following statement:

1

> Once again, I request your careful attention to an overdue balance of $2,075.00 on your account. Your delay to pay this balance may result in negative effect on your credit score, causing you to pay higher interest rates on loans and auto insurance rates in the future

Am. Compl. ¶ 27 (Dkt. 17); Letter (Dkt. 17-1). Randolph argues that this statement in the letter "threatened" her with a negative impact on the credit score. Id. ¶ 31. She further alleges that the letter was deceptive because Congress Collection had "no way of knowing" whether her delayed payment would negatively impact her credit score or result in higher interest rates on loans and auto insurance. Id. ¶¶ 28–30.

As a result of receiving the letter, Randolph alleges that she suffered several injuries. First, the letter "violated [her] right under the FDCPA not to be misled or treated unfairly with respect to any action for the collection of any consumer debt." Id. ¶ 32. Second, the letter "affected and frustrated [her] ability to intelligently respond to Defendant's collection efforts, . . . leaving her unable to prioritize her debts in such a way as to pay those debts with the most risk of negative credit reporting first." Id. ¶ 33. According to Randolph, "[w]ere it not for the statements in the Letter leaving her in doubt about the possibility of a negative impact on her credit score and associated higher interest rates, [she] would have been better able to manage her debts by paying off debts that were at greater risk of negative credit reporting first." Id. ¶ 34. Third, Randolph "was forced to spend time and money in seeking out and hiring an attorney to vindicate her rights under the FDCPA and respond to the Letter." Id. ¶ 35. Fourth, Randolph "suffered emotional anguish, anxiety, pain and suffering in that she was keenly aware of the possibility of a negative impact on her credit score, specifically threatened in the Letter, along with higher interest rates for loans and auto loans, would impact her daily life." Id. ¶ 36. Specifically, Randolph "felt this anxiety because [she] has plans to purchase a car in the future." Id. ¶ 37.

Congress Collection contends that Randolph has not suffered any injury in fact or real risk of harm traceable to Congress Collection's conduct and, therefore, Randolph lacks standing to bring the instant action. Def. 2d Mot. to Dismiss ("MTD") at 4 (Dkt. 19).

## II. STANDARD OF DECISION

Whether a party has standing is an issue of the court's subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). Lyshe v. Levy, 854 F.3d 855, 858 (6th Cir. 2017). Subject-matter jurisdiction is always a "threshold determination," American Telecom Co., L.L.C. v. Republic of Lebanon, 501 F.3d 534, 537 (6th Cir. 2007), and "may be raised at any stage in the proceedings," Schultz v. General R.V. Center, 512 F.3d 754, 756 (6th Cir. 2008). As relevant here, a facial attack on the subject-matter jurisdiction alleged in the complaint questions the sufficiency of the pleading. Gentek Bldg. Products, Inc. v. Sherwin–Williams Co., 491 F.3d 320, 330 (6th Cir. 2007). When reviewing a facial attack, a court must take the allegations in the complaint as true, which is a similar safeguard employed under 12(b)(6) motions to dismiss. Id. If those allegations establish federal claims, jurisdiction exists. Id. "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

## III. DISCUSSION

Article III limits the judicial power to resolving actual "cases" and "controversies," not theoretical questions. U.S. Const. art. III, § 2. No case or controversy exists if the parties do not have standing to bring the action. Hagy v. Demers & Adams, 882 F.3d 616, 620 (6th Cir. 2018). The standing doctrine limits "the category of litigants empowered to maintain a lawsuit in federal court" to confine "the federal courts to a properly judicial role." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016).

Standing has three elements. The plaintiff must have (i) suffered an injury, (ii) that is fairly traceable to the challenged conduct of the defendant, (iii) that is likely to be redressed by a favorable judicial decision. Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–561 (1992). The plaintiff carries the burden of establishing these three elements. Spokeo, 136 S. Ct. at 1547. "Where, as here, a case is at the pleading stage, the plaintiff must clearly . . . allege facts demonstrating each element [of standing]." Id. (punctuation modified).

Randolph alleges that she suffered a statutory violation, an emotional injury, the risk of reprioritizing other interest-bearing debts, and legal costs and fees. The Court addresses each alleged injury in turn and concludes that Randolph has failed to establish that she has standing to litigate her claims.

### A. Statutory Violation

Randolph brings claims for violations of both 15 U.S.C. §§ 1692e and 1692f. Congress Collection argues that the alleged statutory violation does not satisfy the first element of standing—injury in fact. MTD at 12–15. Randolph responds that the alleged violations of the FDCPA are sufficient to confer Article III standing on their own, without any additional allegations of harm. Resp. at 5–17.

In order to satisfy the first standing element, a plaintiff must show that her injury is both (i) "concrete and particularized" and (ii) "actual or imminent, not conjectural or hypothetical." Lujan, 504 U.S. at 560. Here, the parties dispute whether the alleged statutory violation meets the concreteness requirement. A concrete injury means an injury that is "real and not abstract." Spokeo, 136 S. Ct. at 1548 (punctuation modified). A concrete injury need not be a tangible economic or physical harm. Rather, concreteness may be established by way of the intangible harm that, as relevant here, flows from a statutory violation. Buchholz v. Meyer Njus Tanick, PA,

946 F.3d 855, 862 (6th Cir. 2020). Spokeo directs courts to consider two factors to determine whether an intangible injury is cognizable—congressional judgment and the common law. 136 S. Ct. at 1549. Each factor is considered in turn.

### i. Congressional Judgment

Because Congress is "well positioned to identify intangible harms that meet minimum Article III requirements," its decision to create certain procedural rights and causes of action is "instructive and important." Id. However, "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." Id. A plaintiff cannot, therefore, "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." Id. If a plaintiff alleges a "bare" procedural violation of a statute, there must also be an allegation of "additional harm beyond the one Congress has identified" to establish standing. Id. In other words, "[a] plaintiff cannot satisfy its burden to show a concrete injury merely by pleading that the defendant violated a federal statute." Newman v. Encore Capital Group, No. 16-11395, 2017 WL 3479510, at *5 (E.D. Mich. Aug. 14, 2017).

In certain circumstances, the violation of a procedural right granted by statute can be sufficient to constitute injury in fact without the allegation of any additional harm beyond those identified by Congress. Spokeo, 136 S. Ct. at 1549. The violation of a procedural right granted by statute is sufficient in and of itself to constitute a concrete injury in fact if (i) "Congress conferred the procedural right to protect a plaintiff's concrete interests," and (ii) "the procedural violation presents a material risk of real harm to that concrete interest." Macy v. GC Servs. Ltd. P'ship, 897 F.3d 747, 756 (6th Cir. 2018). Accordingly, at the pleading stage, the plaintiff must

5

allege some harm or risk of harm to the particular concrete interest Congress sought to protect with the applicable statutory provision. Gaston v. Finance Sys. of Toledo, Inc., No. 3:18-cv-2652, 2021 WL 964083, at *3 (N.D. Ohio Mar. 15, 2021) (discussing Buchholz, 946 F.3d at 870).

In the context of alleged violations of the FDCPA, the Sixth Circuit has rejected the notion that a consumer suffers a concrete injury any time that she receives a communication containing a misrepresentation, no matter how trivial, during the debt collection process. E.g., Lyshe, 854 F.3d at 858. Rather, under Sixth Circuit precedent, the types of misrepresentations that are sufficient in and of themselves to create a concrete injury are restricted to the heartland of misrepresentations that Congress intended to prevent when it enacted the FDCPA, namely: (i) misrepresentations as to whether the plaintiff owed the debt, such as misstatements regarding the identity of the debtor, the amount of debt owed, or the validity of the debt; (ii) misrepresentations that could cause the plaintiff to waive his procedural rights under the FDCPA; and (iii) threats of arrest or criminal prosecution if the plaintiff fails to pay the debt. See Buchholz, 946 F.3d at 870.

Here, Randolph alleges that she was harmed because the letter states that her delay in paying the debt owed "may result in a negative effect on your credit score, causing you to pay . . . higher interest rates on loans and auto insurance rates in the future." Am. Compl. ¶ 27. Even assuming that this is a misrepresentation, it is light years away from the types of misrepresentations that are sufficient in and of themselves to create an injury in fact. Randolph does not dispute the amount of the debt, the validity of the debt, or that she owes a debt. Further, Randolph does not allege that Congress Collection made any misrepresentation that could cause her to waive her procedural rights under the FDCPA. Finally, although Randolph alleges—in a conclusory manner—that the letter "threatened" her, a "threat" that her delay in paying the undisputed debt

"may" negatively affect her credit score, loan interest rates, and auto insurance rates, is a far cry from a threat of arrest or criminal prosecution.

### ii. Common Law

"An intangible harm that is analogous to a harm recognized at common law signals that the harm is cognizable." Buchholz, 946 F.3d at 868. Randolph argues that "threatening the consumer with a lower credit score and higher interest rates is akin to abuse of process or malicious prosecution at common law." Resp. at 10.

Randolph's arguments fail under Buchholz. There, the Sixth Circuit addressed whether a plaintiff had standing to bring a lawsuit under the FDCPA where he alleged that the defendant violated the act by misrepresenting that an attorney had reviewed the plaintiff's debt. The Sixth Circuit found that the Buchholz plaintiff was unable to show that the injuries he suffered were like any harm that the common law recognizes. 946 F.3d at 870. In relevant part, the court explained that the defendant's "letters do not even mention litigation, so any comparison to abuse of process would be inapt." Id. Further, "[m]alicious prosecution does not fit, either, because [the plaintiff] has not alleged that [the defendant] ever threatened him with arrest, criminal prosecution, or civil litigation." Id.

Here, the letter sent from Congress Collection to Randolph does not mention litigation. Therefore, any comparison to abuse of process is "inapt." In addition, Randolph does not allege that Congress Collection threatened her with arrest, criminal prosecution, or civil litigation. Thus, any comparison to malicious prosecution is likewise inapt.

Because Randolph has not shown that she suffered a harm that Congress intended to prevent or that is analogous to a harm that the common law recognizes, she cannot prevail on the theory that the alleged statutory violation, by itself, is an injury in fact. Thus, Randolph can only

7

survive the instant Rule 12(b)(1) motion if she has alleged some other cognizable injury. As discussed below, Randolph has failed to do so.

### B. Emotional Injury

In Buchholz, the Sixth Circuit expressed serious doubt as to whether an emotional injury such as anxiety is a cognizable injury. 946 F.3d at 863, 867 (noting that "[i]t is far from clear that a bare allegation of anxiety is a concrete injury," and that "we have our doubts" that "anxiety is a cognizable injury"). In that case, the plaintiff argued that, as a result of a debt collection letter that misrepresented that an attorney had reviewed the plaintiff's debts, the plaintiff suffered anxiety that he would be subjected to legal action if he did not promptly pay his debts. The Sixth Circuit held that the plaintiff's anxiety failed to satisfy two elements of standing—injury in fact and traceability. As to injury in fact, the court explained that fear of a future harm is not an injury in fact unless the future harm is "'certainly impending.'" Id. at 865 (quoting Clapper v. Amnesty Int'l USA, 568 U.S. 398, 410, 416 (2013)). The court held that the threat of litigation was not "certainly impending" when the plaintiff filed his complaint, as the letter did not threaten litigation, the debt collector did not otherwise warn the plaintiff that a lawsuit was forthcoming, and, "most importantly," the plaintiff did not allege that he refused to pay what the debt collector said he owed. Id. Rather, the Buchholz court explained, the plaintiff's anxiety stemmed from "what might happen if he does not pay." Id.

As to traceability, the Buchholz court held that the plaintiff's anxiety was a "self-inflicted injury" that, by definition, was not traceable to the defendant's challenged conduct:

> [The plaintiff] does not dispute that he owed the debts, nor does he allege that [the debt collector's] letters contained any inaccuracies. To be sure, [the debt collector's] letters made clear that Buchholz's creditors had not forgotten about him. But the anxiety [the plaintiff] alleges is not because of anything [the debt collector] wrote. He alleges an undue sense of anxiety that he would be subjected to legal action if prompt payment was not made on his debts. The cause of that

8

> anxiety falls squarely on [the plaintiff] because he chose not to pay his debts—and now fears the consequences of his delinquency. So even if anxiety is a cognizable injury—and we have our doubts—the anxiety that [the plaintiff] alleges is not traceable to anyone but him.

Id. at 866–867 (punctuation modified, citation omitted).

Randolph alleges that she felt anxiety and emotional anguish because the letter stated that her delay in paying the debt "may" result in a negative on her credit score, which would in turn cause her to pay higher interest rates on loans and auto insurance rates "in the future." Randolph thus alleges anxiety about a possible future harm that is not certainly impending. Under Buchholz, such anxiety is not a cognizable injury in fact. This conclusion is not altered by the fact that Randolph alleges that she "has plans to purchase a car in the future." Am. Compl. ¶ 36. Even if Randolph is correct that she will buy a car in the future, whether she will have timely paid off her debt by then, or whether her failure to pay off her debt will have had any effect on her credit score, loan interest rates, or auto insurance rates, is entirely speculative. Randolph's failure to specify when she plans to buy a car in the future underscores the point that any future harm is not certainly impending.

Further, Randolph's anxiety is arguably self-inflicted. Like the Buchholz plaintiff, Randolph does not dispute the validity of the debt. Rather, she alleges anxiety regarding negative effects on her credit score, insurance rates, and auto loan rates. However, the letter provides that Randolph's delay in paying the debt she indisputably owes is what "may" negatively affect her credit score. As a result, the ultimate cause of Randolph's anxiety is her own failure to pay her debts and the potential consequences of her delinquency.

Because Randolph's anxiety is neither an injury in fact nor fairly traceable to Congress Collection's challenged conduct, her anxiety fails to establish standing.

### C. Prioritization of Debts

Randolph alleges the letter "affected and frustrated [her] ability to intelligently respond to Defendant's collection efforts, . . . leaving her unable to prioritize her debts in such a way as to pay those debts with the most risk of negative credit reporting first." Am. Compl. ¶ 33. However, Randolph does not identify any way in which her prioritization of debts was actually affected. Notably, she does not allege that she actually paid the debt owed to Congress Collection—or any other debt—as a result of receiving the letter. Therefore, the letter's alleged effect on Randolph's ability to prioritize her debts is not an injury in fact. See Gaston, 2021 WL 964083 at *3 ("[The plaintiff] does not identify any way in which his prioritization of obligations was actually affected . . . . If a risk of harm to a debtor's ability to prioritize how to handle their obligations was sufficient, then the debtor in Buchholz would have had standing as well, because the alleged violation—misrepresenting that an attorney had reviewed the debtor's debt—would have also instilled a sense of urgency that risked prompting the debtor to make payment.").

### D. Attorneys' Fees and Costs

Finally, Randolph argues that her legal costs and fees to procure an attorney as a result of receiving the letter is an injury in fact. Payment of fees is traditionally considered a tangible economic harm. However, pursuant to Buchholz, "plaintiffs 'cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending.'" 946 F.3d at 865 (quoting Clapper, 568 U.S. at 416). Therefore, where a future harm is not "certainly impending," the plaintiff cannot claim that "his meetings with his attorney amount to an injury in fact." See id. at 865. Based on the Sixth Circuit's aversion to allowing plaintiffs to create standing by simply going to a lawyer, paying a lawyer cannot be considered sufficient in and of itself to create standing. This conclusion is supported by opinions

from this district that have held that the payment of attorneys' fees to retain counsel can constitute support a finding of standing if the attorney is retained to object to the amount of debt owed or the validity of a debt. See, e.g., Nettles v. Midland Funding LLC, No. 20-10158, 2021 WL 1193165, at *5 (E.D. Mich. Mar. 30, 2021); Loewe v. Weltman, Weinberg & Reis Co., L.P.A., No. 19-12187, 2020 WL 409655, at *4 (E.D. Mich. Jan. 24, 2020).

For the reasons discussed above, Randolph has not shown some other basis for standing. Consequently, Randolph's decision to hire and pay a lawyer is not sufficient in and of itself to create an injury in fact.

### IV. CONCLUSION

Congress Collection's second motion to dismiss (Dkt. 19) is granted.

SO ORDERED.

Dated: May 3, 2021                                s/Mark A. Goldsmith
 Detroit, Michigan                                MARK A. GOLDSMITH
                                                  United States District Judge